UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONNIE R. FLOYD,

    Petitioner,

v.                                                                                            Case No. 8:18-cv-518-VMC-NHA

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

# ORDER

Donnie R. Floyd, a Florida prisoner, timely filed a *pro se* amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 14.) Respondent filed a response opposing the petition. (Doc. 21.) Floyd replied to the response. (Doc. 25.) Upon consideration, the Court **DENIES** the petition.

## Background

A state court jury convicted Floyd of one count of sexual battery on a victim less than 12 years of age; 17 counts of sexual battery upon a child 12 years of age or older but under 18 years of age by a person in familial authority; one count of lewd or lascivious molestation; one count of incest; and one count of possession, control, or intentional viewing of material including sexual conduct by a child. (Doc. 22-2, Ex. 1, pp. 85-105.) The state trial court sentenced Floyd to life in prison and found

1

him to be a sexual predator. (*Id.*, pp. 108-132.) The state appellate court *per curiam* affirmed the convictions and sentences. (Doc. 22-2, Ex. 4.)

Floyd sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 22-2, Ex. 13.) The state court denied his petition (Doc. 22-2, Ex. 20.) The state appellate court per curiam affirmed the denial of relief. (Doc. 22-2, Ex. 24.) Floyd also filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141(d). (Doc. 22-2, Ex. 16.) The state appellate court denied his petition. (Doc. 22-2, Ex. 17.)

### **Facts**[1]

The victim was Floyd's daughter. Floyd and the victim's mother were divorced, but on some weekends the victim stayed with Floyd at his home in Clearwater, Florida. When the victim was 11 years old, Floyd began engaging in sexual activity with her. The sexual activity happened every time she visited him. Floyd videotaped the activity.

When the victim was 15 years old, she moved with her mother out of state. She visited Floyd in Florida around Christmas, when he again videotaped them engaging in sexual conduct. The victim was supposed to visit Floyd the next summer, but she "couldn't handle it anymore" and told her boyfriend what had happened. (Doc. 22-2, Ex. 1a, p. 241.) Her boyfriend called police, who had the

---

[1] The factual summary is based on the trial transcript and appellate briefs.

victim place a controlled phone call to Floyd. On the call, Floyd discussed making the videos and engaging in sexual activity with the victim.

## Standards Of Review

**The AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the

3

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. It also denied Floyd's petition alleging ineffective assistance of appellate counsel without comment. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

4

**Ineffective Assistance Of Counsel**

Floyd alleges ineffective assistance of trial and appellate counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Floyd must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Floyd must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim of ineffective assistance of appellate counsel, Floyd must show that appellate counsel's performance was objectively

unreasonable, and that there is a reasonable probability that, but for this performance, he would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt"). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### **Exhaustion Of State Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

## Analysis

**Ground One**

Floyd argues that the State's evidence was insufficient to prove his guilt on count one, sexual battery on a victim less than 12 years of age. The State had to prove that the victim was less than 12 years old at the time of the offense, *see* § 794.011(2)(a), Fla. Stat., but Floyd asserts that the victim's inconsistent testimony indicates she could have been either 11 or 12 years old.

As an initial matter, Floyd does not raise a federal constitutional claim in Ground One. Therefore, it is not cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief."). Even if the claim is liberally construed as raising a federal due process claim, *see Jackson v. Virginia*, 443 U.S. 307 (1979), the federal due process claim is procedurally defaulted and barred from review under § 2254.

On direct appeal, Floyd raised this argument solely in terms of state law. (Doc. 22-2, Ex. 2, pp. 4-7.) He did not cite federal case law, refer to any federal constitutional provision, or allege that his federal due process rights were violated. (*Id.*) Therefore, Floyd failed to exhaust a federal due process claim by fairly presenting it to the state appellate court. Floyd cannot return to state court to raise a federal due process claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of the rendition of the sentence).

Accordingly, Floyd's federal due process claim is procedurally defaulted on review under § 2254. *See Smith*, 256 F.3d at 1138; *see also Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (stating that a claim is procedurally defaulted when it is "not presented to the state courts 'consistent with [the State's] own procedural rules' " (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000))); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims

8

would be procedurally barred in state court due to a state-law procedural default, [a court] can . . . treat those claims now barred by state law as no basis for federal habeas relief."). Floyd does not establish that an exception applies to overcome the procedural default. *See Smith*, 256 F.3d at 1138. Therefore, Ground One is barred from federal habeas review.

**Ground Two**

Floyd argues that appellate counsel was ineffective for not raising "the many attempts-decisions concerning the discharge/withdrawal of . . . trial counsel." (Doc. 14, p. 7.) The Court liberally construes this claim as raising the same claim presented in Floyd's state habeas petition. There, Floyd alleged that appellate counsel was ineffective for failing to argue that the trial court erred when, shortly before trial, it did not (1) grant him a continuance so that he could hire new private counsel; (2) appoint the Public Defender; or (3) allow him to proceed *pro se*. (Doc. 22-2, Ex. 15, p. 4.)

The state appellate court denied Floyd's claim of ineffective assistance of appellate counsel without comment. (Doc. 22-2, Ex. 17.) Floyd does not show that this ruling was unreasonable. Floyd hired private counsel to represent him at trial. (Doc. 22-2, Ex. 1, p. 46.) On May 18, 2015, counsel filed a motion to withdraw. (*Id.*, pp. 48-49.) At a hearing, counsel explained her understanding that Floyd was dissatisfied with her, wanted to terminate her services, and planned to file a petition

9

for writ of habeas corpus. Floyd told the state trial court that this information was not accurate:

> THE DEFENDANT: That's not correct, Your Honor. That's all wrong. That's all wrong.
>
> I was thinking about filing a habeas corpus, but it wasn't against her and I don't know where she got that from. That's all wrong. Unless - -
>
> THE COURT: All right.
>
> THE DEFENDANT: Unless [the person assisting him in communicating with counsel] misunderstood what I was saying. That's all wrong. I don't want to get rid of my counsel.
>
> THE COURT: You don't want to get rid of your counsel?
>
> THE DEFENDANT: No.
>
> THE COURT: And you're not filing a writ of habeas corpus against her for ineffective assistance?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you have any problems with her representation at this time?
>
> THE DEFENDANT: No, not at this time.
>
> THE COURT: Okay.
>
> THE DEFENDANT: I was going to file a habeas corpus, but it wasn't against her.
>
> THE COURT: Okay.
>
> All right.

(*Id.*, p. 194.)

Floyd explained that he had trouble contacting counsel, and that he was not receiving paperwork from her. (*Id.*, p. 195.) But he maintained that he was satisfied with counsel and wanted her to continue to represent him. (*Id.* pp. 195-96.) The trial court denied counsel's motion to withdraw, determining that the matter had been resolved. (*Id.*, p. 200.)

Floyd's trial was set for November 10, 2015. During a November 6, 2015 hearing, counsel stated that Floyd told her the day prior that he was dissatisfied with her advice and services and that he wanted to get a second opinion or find another attorney. (*Id.*, pp. 205-06.) Counsel expressed her concern "proceeding under the circumstances." (*Id.*, p. 206.) The prosecutor stated that Floyd told family members, presumably on recorded phone calls from the jail, "that he knows he's getting life, so he's going to call around and try to find another attorney to come on his case at the last minute." (*Id.*)

At that point in the hearing, Floyd filed a handwritten motion to discharge counsel and for a continuance. (*Id.*, p. 209.) In addressing the motion, the trial court found that his allegations were "general averments" and were "so general, I have no idea what you're talking about." (*Id.*, p. 210.) Floyd stated that counsel should have deposed Officer Stubbard, who was present when a search warrant was executed at Floyd's home. (*Id.*, p. 210.) Counsel responded that a deposition of Officer Stubbard would go to the validity of a motion to suppress based on the officers' failure to knock and announce their presence. (*Id.*, p. 211.) Counsel explained that she and

11

Floyd had "been discussing this for months," and that she believed a motion to suppress would have been frivolous. (*Id.*, pp. 211-12.)

Floyd next told the trial court that he believed counsel should file motions but conceded that he was not certain what kind of motions could be filed. (*Id.*, pp. 211-12.) Floyd eventually said he thought counsel should file a motion to suppress evidence recovered from his home, but the trial court pointed out that counsel "just indicated she knows about that and there's no valid motions there." (*Id.*, pp. 212-14.)

The trial court stated that any disagreement between Floyd and his attorney was not a reason to remove counsel, and reviewed portions of the case file showing that Floyd's attorney had been on the case for over a year and had been participating in discovery and preparing for trial. (*Id.*, pp. 214-16.) The trial court noted that despite Floyd's assertions that he had not had adequate communication with his attorney, it was apparent that they had been in contact and had been communicating regarding an attempt at a plea bargain. (*Id.*, pp. 216-18.)

Counsel renewed her motion to withdraw, but the trial court rejected her request, finding that Floyd's disagreements with her were "not a reason to discharge [her] as counsel." (*Id.*, pp. 219-20, 224.) The trial court concluded:

> If he doesn't agree with what you're doing as far as trial strategy, he can disagree. But you're the attorney. You're the one that's making the calls. . . .
>
> [A]s far as your strategy, you're sharing the information that you have with him. You've been trying to successfully negotiate this case. It's not come to that point. Obviously, the State feels they have a very

overwhelmingly strong case against him, and they're not going to back down and give him any kind of concessions.

So, Mr. Floyd, I see this as a veiled attempt on your part just to extract a continuance by any means. You have had ample time to hire other counsel or to get that second opinion, yet you wait until literally two business days before this trial starts to try to extract a continuance and a delay just because you don't want to face this trial at this time.

The deadline's here. It's time to make a decision.

You may not like your attorney. You don't have to like your attorney. Your attorney doesn't have to like you. What she has to do is adequately represent you under the law. If you want to hire another attorney, you do that, but they've got to be ready on Tuesday.

You want to represent yourself, you can do that. But you got to be ready on Tuesday.

You're creating this situation; you and you alone, no one else. You create a bad set of communications between you and your attorney, that's your fault. . . .

She's trying to tell you what you're looking at. She's trying to share this information with you.

I find that she's being credible here before this Court and you are lacking credibility. She meets with you, talks to you on the phone for lengthy periods of time, but, oh, no, you don't get a chance to talk to her.

You're trying to tell me that she's doing the minimal on this. I'd say she's doing a lot more than that.

I've met with your attorney and you on numerous occasions attempting to try to resolve the case and also telling me the progress in discovery once you couldn't resolve the case with the State.

It's time for trial.

(*Id.*, pp. 220-23.)

13

Floyd does not show entitlement to relief. The Sixth Amendment right to counsel encompasses "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). But because the Sixth Amendment's goal is to "guarantee an effective advocate for each criminal defendant rather to ensure that a defendant will inexorably be represented by the lawyer whom he prefers," a defendant's right to choose his counsel is not absolute. *Wheat v. United States*, 486 U.S. 153, 159 (1988).

"A defendant cannot use the right to counsel as a means to manipulate the court and cause delay." *United States v. Graham*, 643 F.3d 885, 894 (11th Cir. 2011). "Whether the denial of a request for continuance to obtain counsel is violative of the Sixth Amendment guarantee of the right to counsel must be resolved on a case by case basis, depending upon the particular circumstances, including the reasons for the request presented to the trial judge." *United States v. Terry*, 449 F.2d 727, 728 (5th Cir. 1971). "[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (internal quotation marks and citation omitted).

Here, Floyd sought to hire new counsel only a few days before trial was scheduled to start. But there is no indication that he had attempted to retain another attorney, and he did not identify what he thought his counsel should have done

differently other than file a motion that counsel had already determined to be meritless and take a deposition in support of such a motion. Floyd did not allege that his attorney was unprepared to try the case. And as the State indicated, Floyd apparently called family members and told them that he was going to try to find another attorney at the last moment because he expected to receive a life sentence. Under these circumstances, Floyd has not shown that the trial court's denial of a continuance for him to hire another attorney was "unreasoning and arbitrary . . . in the face of a justifiable request for delay." *Slappy*, 461 U.S.at 11-12. Thus, Floyd does not show that the trial court's denial of his request for a continuance to obtain new counsel violated his Sixth Amendment rights.

Nor does Floyd show that the trial court erred in not allowing him to proceed *pro se* or in not appointing the Public Defender. There is no indication that Floyd requested to proceed *pro se*. A criminal defendant must "clearly and unequivocally assert the right of self-representation" before a court permits him to proceed *pro se*. *Stano v. Dugger*, 921 F.2d 1125, 1164 (11th Cir. 1991) (quoting *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1064 (11th Cir. 1986)). Similarly, there was no indication that Floyd requested or qualified for the services of the Public Defender. Rather, he spoke to the trial court about hiring a different attorney. Floyd has not shown that appellate counsel was ineffective for failing to argue that the trial court erred in not permitting him a continuance to hire another attorney or in not appointing the Public Defender or allowing him to proceed *pro se*.

15

Floyd does not demonstrate that the state appellate court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Two.

**Ground Three**

Floyd contends that trial counsel was ineffective for not moving to suppress evidence seized from his home. Police recovered videos and photographs, along with items such as flooring and bed linens that were visible in the videos and photographs. Floyd contends that this evidence should have been excluded because police did not comply with Florida's knock and announce law. He contends that the outcome of trial would have been different absent this evidence.

> The state court denied Floyd's claim:
>
> Defendant is not entitled to relief, because a motion to suppress based on a knock and announce violation would not have been successful. Initially, the record reflects that counsel was aware of Defendant's desire to pursue a motion to suppress based on a knock and announce violation, but refused to file the motion because she believed it would have been meritless. . . . . For the reasons stated below, this Court agrees.
>
> The "knock and announce" rule is codified in section 933.03, Florida Statutes, which provides that a law enforcement officer with a search warrant "may break open any outer door, inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if after due notice of the officer's authority and purpose he or she is refused admittance to said house or access to anything therein." "The requirements of section 933.09, however, are applicable only to *forcible entries*." State v. Herstone, 633 So.2d 110, 111 (Fla. 2d DCA 1994) (emphasis added) citing State v. Gray, 518 So.2d 301, 302 (Fla. 2d DCA 1987) (holding that knock and announce statute did not apply to entry that was not forcible); see also State v. Clarke, 387 So.2d 980,

16

> 981 (Fla. 2d DCA 1980) ("Where entry is gained peaceably, as by invitation, the 'knock and announce' requirement does not apply.").
>
> Here, a motion to suppress based on a knock an[d] announce violation would not have been successful because Defendant admits in his motion that there was no forced entry. See Herstone, 633 So.2d at 111; Gray, 518 So.2d at 302. Defendant states that he was approached at his home by law enforcement, who informed him that they were law enforcement, and that he voluntarily left the residence to speak with law enforcement in private. Moreover, Detective Diana Bergman testified at trial that after reviewing the victim's interview with law enforcement in Vermont, she obtained a search warrant for Defendant's residence . . . . She testified that she an[d] another detective approached the door, and Defendant answered and agreed to speak with her at the police station.
>
> Considering the foregoing, it is clear that there was no breaking or forced entry into Defendant's home as Defendant opened the door, and therefore the knock and announce rule did not apply. See Herstone, 633 So.2d at 111; Gray, 518 So.2d at 302. The Court further notes that the detective's use of deception to gain peaceable entry does not violate knock and announce requirements. "Generally, the rationale of the cases holding that entry by deception does not violate the 'knock and announce' rule is that there has been no 'breaking' or use of force in the entry and therefore, *no announcement of authority or purpose is required prior to entry.*" Herstone, 633 So.2d at 111 (quoting Ryals v. State, 498 So.2d 1365, 1366 (Fla. 5th DCA 1986) (emphasis added); see also Koptyra v. State, 172 So.2d 628 (Fla. 2d DCA 1965) (officer's peaceable entry into home gained by concealing his identity and purpose proper despite officer's failure to announce purpose before entering). Thus, any motion to suppress based on an alleged knock and announce violation would have been denied. Counsel is not deficient for failing to file a meritless motion. See Ferrell v. State, 29 So.3d 959, 976 (Fla. 2010). This claim is denied.

(Doc. 22-2, Ex. 20, pp. 59-60) (state court's record citations omitted).

Floyd does not show that the state court's denial of his claim was unreasonable. Whether counsel was ineffective for not filing a motion to suppress depends upon an application of Florida's knock and announce law. This Court must

17

defer to the state court's determination that the motion to suppress would have failed under Florida law. *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))). Counsel is not ineffective for failing to raise a meritless argument. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Because Floyd does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Three.

It is therefore **ORDERED** that Floyd's amended petition for writ of habeas corpus (Doc. 14) is **DENIED**. The **CLERK** is directed to enter judgment against Floyd and to **CLOSE** this case.

### Certificate Of Appealability And Leave To Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Floyd is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). The district court or court of appeals must first issue a COA. *Id*. "A [COA] may issue

. . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). To obtain a certificate of appealability, Floyd must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Floyd has not made the requisite showing. Finally, because Floyd is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on September 18, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE